# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

PANAGIOTIS KROKOS and CHARLES
TUTTLE, on behalf of themselves and all others
similarly situated,

                        Plaintiffs,

     v.

THE FRESH MARKET, INC.,

                        Defendant.

No. 1:16-cv-12082

Judge Indira Talwani

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, AND <u>ATTORNEYS' FEES AND COSTS</u>

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

    I.      Factual Allegations .......................................................................... 2

    II.     Overview of Investigation, Litigation, and Settlement Negotiations .................... 2

SUMMARY OF SETTLEMENT TERMS ....................................................................... 4

    I.      The Settlement Fund ........................................................................ 4

    II.     Eligible Employees .......................................................................... 4

    III.    Claim Procedure ............................................................................. 4

    IV.    Release ............................................................................................. 6

    V.     Allocation Formula .......................................................................... 6

    VI.    Service Awards ................................................................................ 8

    VII.   Settlement Claims Administration .................................................. 8

    VIII.  Attorneys' Fees and Litigation Costs ............................................. 8

ARGUMENT ..................................................................................................................... 9

    I.      A One-Step Approval Process Is Standard for FLSA Settlements ........................ 9

    II.     The Settlement Is Fair and Reasonable and Should Be Approved ...................... 11

    III.    The Service Awards and Additional Payments to Plaintiffs Should
          Be Approved as Fair and Reasonable ............................................. 15

    IV.    Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable ........... 19

CONCLUSION ................................................................................................................ 22

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Allman v. American Airlines, Inc. Pilot Retirement Benefit Program*,
    No. 14 Civ. 10138 (D. Mass. Feb. 15, 2017) ........................................ 19

*Anderson v. HomeDelivery*,
    No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) ........................................ 21

*Aros v. United Rentals, Inc.*,
    Nos. 10 Civ. 73, 11 Civ. 1281, 11 Civ. 1282, 11 Civ. 1283, 11 Civ. 1284, and
    11 Civ. 1285, 2012 WL 3060470 (D. Conn. July 26, 2012) .............................. 9, 17

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................... 10

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................. 19

*Bozak v. FedEx Ground Package Sys., Inc.*,
    No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ................ 9, 14, 15, 16

*Bussie v. Allamerica Fin. Corp.*,
    No. 97 Civ. 40204, 1999 WL 342042 (D. Mass. May 19, 1999) ...................... 15, 18

*Campbell v. Advantage Sales & Mktg. LLC*,
    No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) .......................... 9

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    No. MDL 09-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ......................... 15

*Cifuentes v. CEVA Logistics U.S., Inc.*,
    No. 16 Civ. 1957, 2017 WL 4792425 (S.D. Cal. Oct. 23, 2017) .......................... 8

*Crenshaw v. Texas Roadhouse, Inc.*,
    No. 11 Civ. 10549 (D. Mass. September 5, 2012) ..................................... 21

*Cunha v. Avis Budget Car Rental, LLC*,
    No. 16 Civ. 10545, 2016 WL 6304432 (D. Mass. Oct. 26, 2016) ......................... 9

*Curtis v. Scholarship Storage Inc.*,
    No. 14 Civ. 303, 2016 WL 3072247 (D. Me. May 31, 2016) ............................. 11

*Cutter v. HealthMarkets, Inc.*,
    No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) ........................................ 21

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 12 Civ. 4494, 2015 WL 2255394 (S.D.N.Y. May 7, 2015)................................ 16, 17, 18

*Dent v. ITC Serv. Grp., Inc.*,
    No. 12 Civ. 00009, 2013 WL 5437331 (D. Nev. Sept. 27, 2013) ......................................... 16

*Dixon v. Zabka*,
    No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ............................................ 9

*Durrett v. Hous. Auth. of City of Providence*,
    896 F.2d 600 (1st Cir. 1990)............................................................................................. 11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................................... 19

*Genesis Healthcare Corp. v. Symczyk*,
    133 U.S. 66 (2013)............................................................................................................. 10

*Guippone v. BH S & B Holdings, LLC*,
    No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ......................................... 18

*Henry v. Little Mint, Inc.*,
    No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014)................................... 13, 18

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165, 169-70 (1989) ........................................................................................... 10

*Johnson v. VCG Holding Corp.*,
    802 F. Supp. 2d 227 (D. Me. 2011) .................................................................................. 10

*Jones v. Virginia Oil Co., Inc.*,
    69 F. App'x. 633 (4th Cir. 2003) ...................................................................................... 13

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
    No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ..................................... 9, 17

*Lapan v. Dick's Sporting Goods, Inc.*,
    No. 13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) ........................... 13, 14, 21

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17 Civ. 10219, 2017 WL 5900058 (D. Mass. Nov. 28, 2017)................................. 20, 21

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17 Civ. 10219, 2017 WL 6460244 (D. Mass. June 8, 2017) .................................. *passim*

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................................................ 11

*Matamoros v. Starbucks*,
  No. 08 Civ. 10772 (D. Mass. August 16, 2013) ................................................................ 21

*McKenna v. Champion Int'l Corp.*,
  747 F.2d 1211 (8th Cir. 1984) ......................................................................................... 10

*Michaud v. Monro Muffler Brake, Inc.*,
  No. 12 Civ. 353, 2015 WL 1206490 (D. Me. Mar. 17, 2015) ........................................... 14

*Norman v. Hous. Auth. of the City of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ....................................................................................... 20

*O'Connor v. Oakhurst Dairy*,
  No. 14 Civ. 192, 2015 WL 2452678 (D. Me. May 22, 2015) .......................................... 9, 10

*O'Donnell v. Robert Half Int'l, Inc.*,
  534 F. Supp. 2d 173 (D. Mass. 2008) .............................................................................. 12

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
  No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................ 18, 19

*Pike v. New Generation Donuts, LLC*,
  No. 12 Civ. 12226, 2016 WL 707361 (D. Mass. Feb. 20, 2016) ....................................... 9,10

*Prena v. BMO Fin. Corp.*,
  No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ........................................ 14

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ........................................................................................ 20

*Reyes v. Altamarea Grp., LLC*,
  No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................... 19

*Root v. Ames Dep't Stores, Inc.*,
  989 F. Supp. 274 (D. Mass. 1997) ..................................................................................... 9

*Scovil v. FedEx Ground Package Sys., Inc.*,
  No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ....................................... *passim*

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ....................................... 18

*Singleton v. AT&T Mobility Servs., LLC*,
  146 F. Supp. 3d 258 (D. Mass. 2015) ............................................................................... 11

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) ........................................................................................... 19, 20

*Thomas v. Speedway SuperAmerica, LLC*,
    506 F.3d 496 (6th Cir. 2007) ............................................. 13

*United States v. Cannons Eng'g Corp.*,
    899 F.2d 79 (1st Cir. 1990) ............................................. 11

*Woods v. N.Y. Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) ............................................. 10

*Woolfson v. Caregroup, Inc.*,
    No. 09 Civ. 11464, 2010 WL 10063268 (D. Mass. Sept. 13, 2010) ...................................... 12

**STATUTES**

29 U.S.C. § 216(b) ............................................. 2, 9, 10

Mass. Gen. L. c. 151 § 1A, § 1B ............................................. 2

N.Y. Lab. Law, Article 6, §§ 190 *et seq* ............................................. 2

**RULES**

Fed. R. Civ. P. 23 ............................................. 9, 10

**OTHER AUTHORITIES**

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ............................................. 15

William B. Rubenstein, Newberg on Class Actions § 13.44 ............................................. 11

## <u>INTRODUCTION</u>

Plaintiffs Panagiotis Krokos and Charles Tuttle ("Plaintiffs") and Defendant The Fresh Market, Inc. ("Defendant") (collectively, the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement, which followed a thorough pre-suit investigation, commencement of litigation, formal and informal discovery, and two private mediation sessions with experienced JAMS mediator Michael Young, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was reached after in-depth investigation and review of significant documentary evidence and payroll data, was the result of arm's-length settlement negotiations between experienced counsel assisted by a private mediator, and provides good value to the workers it will benefit.

Plaintiffs respectfully request that the Court issue an order: (1) approving the $2,150,000.00 settlement set forth in the Settlement and Release Agreement ("Settlement Agreement"), attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs ("Swartz Decl.");[1] (2) approving the proposed Notice of Settlement (for Opt-Ins) and Notice of Settlement and Opportunity to Join Collective Action (for Non-Opt-Ins) ("Settlement Notice" (attached as Exhibit B to the Settlement Agreement)) and directing its distribution; (3) approving Service Awards of $4,500 and additional payments of $4,500 to each of the Plaintiffs; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees, plus reimbursement of costs and expenses; (5) approving the Settlement Administrator's fees and costs of $24,073; and (6) incorporating the terms of the Settlement Agreement.

---

[1] Unless otherwise indicated, all exhibits are attached to the Swartz Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Allegations

Plaintiffs are current and former employees of Defendant who worked as exempt-classified Assistant Store Managers ("ASMs") throughout the United States, except California. Defendant is a specialty foods retailer that operates more than 170 supermarkets in 23 states.  *See* ECF No. 1 (Complaint) ¶¶ 5-6.  Plaintiffs allege that Defendant violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, the Massachusetts Wage Laws ("MWL"), Mass. Gen. L. c. 151 § 1A, § 1B, and the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, by improperly classifying them and other ASMs as exempt from federal and state overtime requirements and failing to pay them overtime wages.  *Id.* ¶¶ 2-4, 8-9.

### II.     Overview of Investigation, Litigation, and Settlement Negotiations

On January 28, 2016, Plaintiffs sent a letter to Defendant requesting that the Parties engage in pre-suit settlement discussions regarding ASMs' overtime claims.  Swartz Decl. ¶ 15. The Parties had multiple conversations over the course of several months regarding the claims and Plaintiffs' request to mediate prior to filing a lawsuit, but were unable to reach a pre-suit resolution.  *Id.* ¶ 16.

Plaintiffs commenced this action by filing a Class and Collective Action Complaint on October 18, 2016.[2]  *See* ECF No. 1 (Complaint).  Defendant filed its Answer on December 30, 2016.  *See* ECF No. 31 (Answer).  On January 30, 2017, the Court approved the Parties' stipulation to send notice of the action to the proposed FLSA collective pursuant to 29 U.S.C. § 216(b).  ECF No. 39 (Order Approving Joint Stipulation to Conditional Certification and

---

[2]  The Complaint also named Apollo Management Group, LLC ("Apollo") as a defendant.  On November 30, 2016, Plaintiffs voluntarily dismissed Apollo from the action.  ECF No. 26 (Notice of Voluntary Dismissal Without Prejudice).

Notice).  Court-authorized notice subsequently went out to a collective of 1,127 ASMs, and approximately 409 Opt-Ins joined the case.  Swartz Decl. ¶ 19.  During and after the notice period, both sides exchanged discovery requests, and Defendant produced a limited universe of documents, including job descriptions, store-level training materials, and Plaintiffs' personnel files.  *Id.* ¶ 20.

On May 8, 2017, Plaintiffs sought leave to file an amended complaint, ECF No. 53, which Defendant opposed on May 22, 2017.  ECF No. 64.  The Parties also briefed a discovery dispute concerning the scope of opt-in discovery.  Swartz Decl. ¶ 22.  On May 12, 2017, Plaintiffs moved for a protective order to limit the number of Opt-In Plaintiffs subject to Defendant's written discovery requests, ECF No. 57, and Defendant submitted an opposition. ECF No. 61.

In early June 2017, while Plaintiffs' motions were pending, the Parties agreed to attempt to resolve the case through private mediation and, on June 5, 2017, submitted a joint motion to stay all proceedings.  ECF No. 66.  The Court granted the motion on June 6, 2017.[3]  ECF No. 67.

The Parties participated in two full-day mediation sessions with Michael Young, an experienced mediator in employment and wage and hour law, on August 23, 2017 and October 24, 2017.  Swartz Decl. ¶ 25.  As part of the mediation process, the Parties engaged in an informal exchange of discovery pursuant to a confidentiality agreement.  *Id.* ¶ 26.  Defendant produced data to allow Plaintiffs to calculate damages, including data showing the number of potential collective members in the job title, salaries, and weeks worked.  *Id.* ¶ 27.  Plaintiffs' Counsel analyzed this data and constructed a damages model.  *Id.*

---

[3]  The Court subsequently continued the stay to allow the Parties additional time to negotiate and finalize the Settlement Agreement and submit a motion for court-approval of settlement.  *See* ECF Nos. 70, 72, 75, 77, 79, 81, 83 (Orders Granting Continuance of Stay).

The Parties submitted mediation briefs setting forth their respective positions as to liability and damages, and exchanged them so that both sides could evaluate the strengths and weaknesses of their positions.  *Id.* ¶ 28.  The Parties attended a full-day mediation on August 23, 2017, but were unable to reach a settlement that day.  *Id.* ¶ 29.  The Parties continued their settlement efforts, and attended a second mediation session on October 24, 2017.  *Id.* ¶ 30.  During that session, the Parties reached an agreement in principle and executed a term sheet.  *Id.*  Over the next several months, the Parties finalized the terms of the settlement, and executed a formal Settlement Agreement on February 5, 2018.  *Id.* ¶ 31.

## SUMMARY OF SETTLEMENT TERMS

### I.    The Settlement Fund

The Settlement Agreement establishes a Gross Settlement Amount of $2,150,000.00 from which individual Settlement Awards will be paid to Eligible Settlement Collective Members. Ex. A (Settlement Agreement) ¶ 3.1(A).  The Gross Settlement Amount also covers any Court-approved Service Awards and payments to Plaintiffs, the Settlement Administrator's fees and costs, and Plaintiffs' Counsel's Court-approved attorneys' fees and costs.  *Id.*

### II.   Eligible Employees

Eligible Settlement Collective Members include Opt-Ins who worked as ASMs at any time during the three-year period immediately prior to the date that he or she opted-in to the Litigation, and Non-Opt-Ins who worked as an ASM at any time during the three-year period immediately prior to the Approval Date.  *Id.* ¶ 1.9.

### III.  Claim Procedure

The Settlement Administrator will mail Settlement Notices enclosing Settlement Checks to all Eligible Settlement Collective Members no later than 15 business days after the Effective

Date.  *Id.* ¶ 2.8; *see id.* at Ex. B (Settlement Notice).  The proposed Settlement Notices will

inform each Eligible Settlement Collective Member of the nature of the claims made, the terms

of the Settlement, his or her individual Settlement Award, the scope of the release, and his or her

right to participate or not participate in the settlement.  *See id.* at Ex. B (Settlement Notice).  The

Settlement Administrator will take all reasonable steps to obtain the correct address of any

Eligible Settlement Collective Member for whom the Settlement Notice is returned as

undeliverable, and will attempt re-mailings in the event better address information is obtained.

*See id.* ¶ 2.10.

Eligible Settlement Collective Members will have 120 calendar days after the initial

mailing or subsequent re-mailing of their Settlement Check to sign and cash the Settlement

Check (the "Acceptance Period").  *Id.* ¶¶ 1.1, 2.9.  The Settlement Administrator will send a

reminder postcard to any Eligible Settlement Collective Member who has not cashed his or her

Settlement Check within 60 days after the initial mailing or subsequent re-mailing, inquiring

whether the Eligible Settlement Collective Member received the Settlement Check and

reminding him or her of the expiration of the Acceptance Period.  *Id.* ¶ 2.9; *see* Ex. B (Reminder

Postcard).

By signing and cashing the Settlement Check, Eligible Settlement Collective Members

who have not previously opted in to the collective action (Non-Opt-Ins) consent, agree, and opt

in to the Litigation.  *See* Ex. A (Settlement Agreement) ¶ 4.2.  At the end of the Acceptance

Period, copies of the Settlement Checks signed and cashed by Non-Opt-In Eligible Settlement

Collective Members will be filed with the Court.  *Id.* ¶ 4.4.

**IV.**   **Release**

All Participating Settlement Collective Members will release all wage and hour claims, demands, actions, and rights of any kind that they may have, whether known or unknown, whether contingent or non-contingent, whether specifically asserted or not, arising under the MWL, NYLL, FLSA, or any other common, local, state, or federal law, including overtime misclassification claims, arising before and through the Approval Date, that were brought in the Litigation or that could have been brought in the Litigation because they are based on similar facts and circumstances as the claims brought in the Litigation, including claims under the New York Code of Rules and Regulations, the Massachusetts Fair Employment Practices Act, all New York minimum wage orders, and/or any federal, state, local, or common law relating to the payment of wages and overtime premiums, as well as claims for attorneys' fees, penalties, interest, liquidated damages, and litigation costs.  Ex. A (Settlement Agreement) ¶¶ 4.1, 4.2.

**V.**   **Allocation Formula**

Eligible Settlement Collective Members' individual Settlement Awards will be calculated pursuant to an allocation formula based on the number of weeks they worked during the relevant period and whether they previously opted in to the case.  *See id.* ¶ 3.4(D).

Each Eligible Settlement Collective Member who is an Opt-In shall be assigned one point for each of his or her Eligible Work Weeks.  *Id.* ¶ 3.4(D)(1).  To calculate the proportionate share of the Net Settlement Fund for each Eligible Settlement Collective Member who is an Opt-In, the Settlement Administrator will add all points for all Eligible Settlement Collective Members who are Opt-Ins together to obtain the "Denominator."  *Id.* ¶ 3.4(D)(1)(a).  The Settlement Administrator will then divide the number of points for each Eligible Settlement Collective Member who is an Opt-In by the Denominator to obtain each Eligible Settlement Collective

Member Opt-In's "Portion of the Net Settlement Fund." *Id.* ¶ 3.4(D)(1)(b).  The Settlement Administrator will then multiply each Eligible Settlement Collective Member Opt-In's Portion of the Net Settlement Fund by 55 percent of the Net Settlement Fund to determine each Eligible Settlement Collective Member Opt-In's Settlement Award.  *Id.* ¶ 3.4(D)(1)(c).

Each Eligible Settlement Collective Member who is a Non-Opt-In shall be assigned one point for each of his or her Eligible Work Weeks.  *Id.* ¶ 3.4(D)(2).  To calculate the proportionate share of the Net Settlement Fund for each Eligible Settlement Collective Member who is a Non-Opt-In, the Settlement Administrator will add all points for all Eligible Settlement Collective Members who are Non-Opt-Ins together to obtain the "Denominator."  *Id.* ¶ 3.4(D)(2)(a).  The Settlement Administrator will then divide the number of points for each Eligible Settlement Collective Member Non-Opt-In by the Denominator to obtain each Eligible Settlement Collective Member Non-Opt-In's "Portion of the Net Settlement Fund."  *Id.* ¶ 3.4(D)(2)(b).  The Settlement Administrator will then multiply each Eligible Settlement Collective Member Non-Opt-In's Portion of the Net Settlement Fund by 45 percent of the Net Settlement Fund to determine each Eligible Settlement Collective Member Non-Opt-In's Settlement Award.  *Id.* ¶ 3.4(D)(2)(c).

For tax purposes, 50 percent of the Settlement Award to an Eligible Settlement Collective Member will be treated as back wages and 50 percent of such Settlement Award will be treated as non-wage relief.  *Id.* ¶ 3.4(E).  Any portion of the Net Settlement Fund that remains unclaimed by Eligible Settlement Collective Members who do not timely sign and cash their Settlement Checks at the end of the Acceptance Period (or that otherwise remains in the Qualified Settlement Fund under the control of the Settlement Administrator upon final accounting of the settlement funds) shall be reallocated among those Eligible Settlement Collective Members who

timely signed and cashed their Settlement Checks on a pro rata basis based on each such Eligible

Settlement Collective Member's initial share of the Net Settlement Fund, if the Settlement

Administrator deems such reallocation practical.  If the Settlement Administrator does not deem

such reallocation practical, the unclaimed portion of the Net Settlement Fund shall be donated to

the Charity.  *Id.* ¶ 3.1(D).

## VI.   <u>Service Awards</u>

The Settlement Agreement provides that, subject to Court approval, Plaintiffs will each

receive a $4,500 Service Award in recognition of assistance rendered in obtaining the benefits of

the settlement for the collective, as well as the risks they took to do so, and in consideration of

executing a general release.  *Id.* ¶ 3.3(A); *see* Swartz Decl. ¶ 39.  In addition, by executing the

Settlement Agreement, Plaintiffs agree to waive any right to re-employment with Defendant and,

subject to Court-approval, will each receive an additional payment of $4,500 in consideration.

*See* Ex. A. (Settlement Agreement) ¶ 3.3(C).

## VII.   <u>Settlement Claims Administration</u>

The Parties have retained JND Legal Administration ("JND"), a wage and hour claims

administrator, to serve as the Settlement Administrator.  Swartz Decl. ¶ 32.  Courts have

routinely approved JND as a settlement administrator in class and collective actions.  *See, e.g.*,

*Cifuentes v. CEVA Logistics U.S., Inc.*, No. 16 Civ. 1957, 2017 WL 4792425, at *1 (S.D. Cal.

Oct. 23, 2017).  JND's fee, estimated to be approximately $24,073, will be paid from the Gross

Settlement Amount.  Ex. A (Settlement Agreement) ¶ 1.12; *see also* Swartz Decl. ¶ 33.

## VIII.   <u>Attorneys' Fees and Litigation Costs</u>

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will

receive $716,666.67 (one-third of the $2,150,000.00 settlement) as attorneys' fees, plus

reimbursement of $32,233.04, which represents reasonable out-of-pocket costs and expenses incurred in litigation and resolving this matter.  Swartz Decl. ¶¶ 46-47; Declaration of Gregg I. Shavitz ¶ 19; Declaration of Hillary Schwab ¶ 7.

## ARGUMENT

I.    **A One-Step Approval Process Is Standard for FLSA Settlements.**

Throughout the country, a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23").  *See, e.g.*, *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (endorsing one-step process for approval of FLSA collective action settlement).[4]  This is because collective actions under Section 216(b) of the FLSA ("Section 216(b)"), 29 U.S.C. § 216(b), do not implicate the same due process concerns as Rule 23 class actions.  *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context.").  "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment."  *Cunha v. Avis Budget Car Rental, LLC*, No. 16 Civ. 10545, 2016 WL 6304432, at *2 (D. Mass. Oct. 26, 2016) (internal quotation omitted); *Pike v. New Generation Donuts, LLC*,

---

[4]  *See also Root v. Ames Dep't Stores, Inc.*, 989 F. Supp. 274, 274 (D. Mass. 1997) (noting that FLSA-only settlement did not deprive those who elected not to opt in of any cause of action); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) (approving one-step settlement approval process for FLSA collective action); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2-3 (D. Conn. July 31, 2014) (same); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013) (same); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1-2 (S.D. Ind. Apr. 24, 2012) (same); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, 11 Civ. 1281, 11 Civ. 1282, 11 Civ. 1283, 11 Civ. 1284, and 11 Civ. 1285, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012) (same).

No. 12 Civ. 12226, 2016 WL 707361, at *3 (D. Mass. Feb. 20, 2016) (same); *O'Connor*, 2015 WL 2452678, at *4 ("[W]ith an opt-in collective action, only individuals who affirmatively chose to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v. Symczyk*, 133 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class actions that are not present in collective actions brought under Section 216(b)). Where, as in this matter, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for opt-outs or objections. *See Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011) ("The central difference between collective certification under the FLSA and under Rule 23 is the FLSA's requirement that those interested in joining the putative class opt in, while Rule 23 certification requires the uninterested to opt out.") (citing *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).

II.     **The Settlement Is Fair and Reasonable and Should Be Approved.**

The Court has a duty to determine whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 14 Civ. 303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (internal quotation omitted); *see also Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).  Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *Lauture*, 2017 WL 6460244, at *1; *see also Curtis*, 2016 WL 3072247 at *3; *Singleton*, 146 F. Supp. 3d at 260; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014).  If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . we allow the district court to approve the settlement. . . ."); *Curtis*, 2016 WL 3072247, at *2 ("A court may approve a FLSA settlement if it is a fair and reasonable resolution of a bona fide dispute over FLSA provisions") (internal quotation omitted); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation omitted); William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

The Settlement in this case easily meets the standard for approval.  First, the Settlement was the result of extensive pre-suit investigation, review of formal and informal discovery, and

substantial arm's-length negotiations between experienced counsel assisted by a private

mediator.  *See* Swartz Decl. ¶¶ 15-31; *Woolfson v. Caregroup, Inc.*, No. 09 Civ. 11464, 2010 WL

10063268, at *2 (D. Mass. Sept. 13, 2010) (approving FLSA settlement where it was "the result

of arms-length negotiations between experienced counsel representing the interests of the

plaintiffs and defendant, after thorough factual and legal investigation").  Recognizing the

uncertain legal and factual issues involved, the Parties reached the settlement pending before the

Court after attending two full-day mediation sessions conducted by experienced JAMS mediator

Michael Young.  Swartz Decl. ¶ 25.

     Second, the Gross Settlement Fund of $2,150,000.00 is substantial, especially in light of

the considerable risk that Plaintiffs faced.  Swartz Decl. ¶ 35.  Plaintiffs' calculations show that

the average net Settlement Award will be approximately $1,220.63 (after fees, Service Awards,

and costs (including settlement administration costs) are deducted).  *Id.* ¶ 36.  By Plaintiffs'

estimate, this is a substantial percentage of the collective members' lost wages.  *Id.* ¶ 37.

However, by Defendant's estimate, even if Plaintiffs were to establish at trial that ASMs should

have been classified as non-exempt, the lost wages of the collective would be much smaller

because Defendant maintains that ASMs worked fewer hours per week than Plaintiffs claim.  *Id.*

¶ 38.

     Additionally, there was a risk that Plaintiffs would not succeed in maintaining a Section

216(b) collective through trial.  Defendant would likely argue that the differences among various

stores and other individualized questions would warrant decertification of the collective.

Although Plaintiffs disagree, defendants have prevailed on such arguments.  *See, e.g.*, *O'Donnell

v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 181 (D. Mass. 2008) (finding plaintiffs failed to

"identify a common policy" to which managers were subject and denying certification of staffing manager collective).

Third, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Even if Plaintiffs could maintain collective treatment throughout trial, Plaintiffs would have to defeat Defendant's argument that ASMs were subject to the bona fide executive exemption under federal and state law.  Some courts have found that workers in similar positions as ASMs were properly classified as exempt.  *See, e.g.*, *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504-09 (6th Cir. 2007); *Jones v. Virginia Oil Co., Inc.*, 69 F. App'x. 633, 634-35, 639 (4th Cir. 2003).  Although Plaintiffs believe these cases are distinguishable, and that they could ultimately establish Defendant's liability, this would require significant factual development.

The proposed allocation of the settlement is also reasonable.  It reflects a proportion of damages owed to Eligible Settlement Collective Members based on the number of weeks they worked for Defendant, which is a reasonable approximation of each Eligible Settlement Collective Member's damages.  Ex. A (Settlement Agreement) ¶ 3.4(i) (allocation plan); *see, e.g.*, *Lauture*, 2017 WL 6460244, at *1 (approving wage and hour collective action settlement agreement where allocation formula was based on the number of weeks worked by collective members) (settlement agreement at ECF No. 19-1); *Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) (approving class and collective action overtime settlement agreement with an allocation formula based upon the number of weeks worked by class members) (settlement agreement at ECF No. 209-3); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *3, *17 (S.D.N.Y. May 23, 2014) (approving

allocation formula based in part on number of work weeks class members were employed during the class period).

The Court should also approve the proposed Settlement Notices. *See* Ex. A (Settlement Agreement) at Exhibit B (Settlement Notice). The proposed Settlement Notices sufficiently inform Eligible Settlement Collective Members of the allocation formula, the steps they must follow in order to participate, the consequences of non-participation, the monetary amount to which they are entitled under the Settlement, the scope and mechanism of the release of claims, the time they have to cash their Settlement Checks, the request for attorneys' fees and costs, and other terms of the Settlement Agreement. *See, e.g., Lauture*, 2017 WL 6460244, at *2 (approving class notice that, *inter alia*, described allocation formula, steps to participate, consequences of non-participation, and scope of release); *Lapan*, 2015 WL 8664204, at *3 (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Michaud v. Monro Muffler Brake, Inc.*, No. 12 Civ. 353, 2015 WL 1206490, at *10 (D. Me. Mar. 17, 2015) (approving "notices [that]. . . communicate accurate information about the suit in order to enable potential collective action members to make informed decisions about whether to participate") (internal quotation omitted); *see also Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (approving one-step settlement notice when it was "sufficiently in plain English to explain the important points: the terms of the settlement, the allocation formula, the amount of the entitlement, how to opt-in, and that cashing the check is equivalent to releasing the claim"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2-3 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing collective).

III.     **The Service Awards and Additional Payments to Plaintiffs Should Be Approved as Fair and Reasonable.**

The Plaintiffs request approval of Service Awards of $4,500 each and additional payments of $4,500 each in consideration for agreeing to waive any right to re-employment with Defendant.  The Service Awards that Plaintiffs request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit.

Service awards are appropriate because named plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *Scovil*, 2014 WL 1057079, at *6 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.").  This is especially true in employment litigation.  *See Bozak*, 2014 WL 3778211, at *4 ("'[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.'" (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007))); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.  *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) ("The purpose of [] incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *Bussie v. Allamerica Fin. Corp.*, No. 97

Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (noting courts consider, *inter alia*, efforts of the named plaintiff in granting awards).  Service awards are commonly awarded to those who serve a class's and/or collective's interests.  *See Scovil*, 2014 WL 1057079, at *6. In examining the reasonableness of a requested incentive award, courts consider: (1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative effects that they have risked.  *Id.* at *6; *see also Bozak*, 2014 WL 3778211, at *4.  Here, Plaintiffs satisfy all four factors.

First, Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit.  *See* Swartz Decl. ¶ 41. Plaintiffs participated in an extensive pre-suit investigation, provided information and documents crucial to establishing their claims and the claims of the putative collective, extensively reviewed the claims presented, helped Plaintiffs' Counsel prepare for the mediation, and made themselves available during the day of and after the mediation sessions.  *Id*. ¶ 42.

Courts in this circuit and others have approved service awards for similar activities in employment cases.  *See, e.g.*, *Lauture*, 2017 WL 6460244, at *3 (approving $15,000 service awards for similar contributions); *Scovil*, 2014 WL 1057079, at *7-8 (approving $15,000 service awards to plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving $15,000 service award to plaintiff for "participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation"); *Dent v. ITC Serv. Grp., Inc.*, No. 12 Civ. 00009, 2013 WL

5437331, at *4, *9 (D. Nev. Sept. 27, 2013) (approving $15,000 award where plaintiff "subjected himself to a substantial, and detrimental, level of notoriety by instituting this lawsuit, assumed a significant financial risk by prosecuting this litigation, and pledged to fully participate in discovery in this case and fully cooperated with Class Counsel in prosecuting this case") (internal quotation omitted).

Second, Plaintiffs' actions have resulted in substantial benefit to the class, leading to an overall gross recovery of $2,150,000.00, which results in an estimated net average award of $1,220.63.  Swartz Decl. ¶ 44.

Third, Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Collective Members.  This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, as well as time and effort expended during the litigation and two mediation sessions.  Swartz Decl. ¶ 42; *see DeLeon*, 2015 WL 2255394, at *7 (awarding service award in light of the "efforts [plaintiff] made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation").

Fourth, Plaintiffs undertook substantial direct and indirect risk.  They agreed to bring the action in their names, to be deposed, and to testify if there was a trial.  Swartz Decl. ¶ 43.  In so doing, they assumed significant risk that, should the suit fail, they could find themselves liable for the defendant's costs or even–if the suit was held to have been frivolous–for the defendant's attorneys' fees.  *Koszyk*, 2016 WL 5109196, at *3.  Courts approve service awards to named plaintiffs in recognition of these risks.  *See, e.g.*, *id.*; *Aros*, 2012 WL 3060470, at *3 ("'Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.'" (quoting

17

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at * 1

(S.D.N.Y. Feb. 9, 2010))).  Moreover, in addition to executing a general release, Plaintiffs also

waived any right to re-employment with Defendant.  *See, e.g.*, *Henry*, 2014 WL 2199427, at *11

(noting execution of broad release in assessing appropriateness of service awards).

        Encouraging individuals with relatively small personal stakes to serve as named plaintiffs

in meritorious class and collective cases is also good public policy.  "In granting incentive

awards to named plaintiffs in class actions, courts consider . . . the important public policy of

fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in

obtaining recoveries for persons other than themselves."  *Bussie*, 1999 WL 342042, at *3.

Although Plaintiffs were no longer employed by Defendant when they initiated the lawsuit, they

merit recognition for risking retaliation from future employers for the benefit of all Eligible

Settlement Collective Members.  *See DeLeon*, 2015 WL 2255394, at *7 (recognizing "the risks

that the named-Plaintiff faced by participating in a lawsuit against her former employer"); *Sewell*

*v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012)

("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees.");

*Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y.

Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the

internet and may become known to prospective employers when evaluating the person.");

*Parker*, 2010 WL 532960, at *1 (recognizing the danger of bringing a lawsuit against former

employer).

        The additional payments are also appropriate because Plaintiffs must give up rights to get

them.  In addition to signing a general release, Plaintiffs must agree not to apply for work with

Defendant again, which limits their options for future employment.

The total of these payments, $9,000, is reasonable and within the range of additional payments that courts in this circuit routinely approve.  *See, e.g.*, *Lauture*, 2017 WL 6460244, at *3; *Scovil*, 2014 WL 1057079 at *8 (collecting cases).[5]  The requested Service Awards and payments for the waiver of any right to re-employment for both Plaintiffs collectively amount to less than 1 percent of the total recovery, which is a reasonable percentage.  Swartz Decl. ¶ 45; *see also Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards of approximately 16.6% of the total recovery); *Parker*, 2010 WL 532960 at *2 (11% of recovery is reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding service award of approximately 8.4% of the total recovery).

**IV.**   **Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

Plaintiffs' request for one-third of the common fund settlement as attorneys' fees plus reasonable costs and expenses is reasonable.  When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).  This is "founded on the equitable principle that those who have profited from litigation should share its costs."  *In re Thirteen Appeals* at 305 n.6; *accord Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method, *see In re Thirteen*

---

[5]  *See also Allman v. American Airlines, Inc. Pilot Retirement Benefit Program*, No. 14 Civ. 10138 (D. Mass. Feb. 15, 2017) (approving $15,000 service award for settlement of Uniformed Services Employment and Reemployment Rights Act claims) (attached as Ex. D).

*Appeals*, 56 F.3d at 306-07—courts generally favor awarding fees in common fund cases based upon a percentage of the fund.  *Id.* at 307 (noting that "use of the [percentage of the fund] method in common fund cases is the prevailing praxis"); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017) ("A fee award of one-third is appropriate because it mimics the market.").

This is so because employing the percentage-of-the-fund method in common fund cases promotes judicial economy.  The percentage-of-the-fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  *See In re Thirteen Appeals*, 56 F.3d at 307 ("using the [percentage of the fund] method in a common fund case enhances efficiency"); *see also Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) ("From the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model.").  Where attorneys' fees are limited to a percentage of the total, there is a strong disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options."  *In re Thirteen Appeals*, 56 F.3d at 307.

Moreover, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents.  *Id.* ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (internal quotation omitted); *see also Lauture*, 2017 WL 5900058, at *1 (finding it unnecessary to perform a lodestar cross-check in order to determine the reasonableness of the fee award); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass.

20

2005) ("The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee.") (citing *In re Thirteen Appeals*, 56 F.3d at 307).

Fee requests of one-third of the common fund have been consistently approved by courts in this district as reasonable.  *See Lauture*, 2017 WL 5900058 (approving one-third of $2,900,000 settlement fund in misclassification case); *see also Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) (approving one-third of $3.3 million settlement plus costs and expenses in misclassification case) (attached as Ex. C); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving one-third of $900,000 settlement fund in misclassification case) (settlement approval motion at ECF No. 106); *Scovil*, 2014 WL 1057079, at *5 (approving one-third of $5.8 million settlement fund in misclassification case); *Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) (approving one-third of $23.5 million settlement for settlement of wage claims of hourly-paid workers) (approval motions at ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse, Inc.*, No. 11 Civ. 10549 (D. Mass. September 5, 2012) (approving one-third of $5 million settlement fund for wage claims of hourly-paid employees) (approval motion at ECF No. 53); *Cutter v. HealthMarkets, Inc.,* No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) (approving one-third of common fund settlement in misclassification case) (approval motion at ECF No. 77); *see also Scovil*, 2014 WL 1057079, at *5 (observing that a one-third common fund fee "is consistent with wage-and-hour settlements in the . . . jurisdiction of Massachusetts").

Moreover, Plaintiffs' Counsels' request for one-third of the settlement fund as attorneys' fees and additional costs and litigation expenses is reasonable in light of the significant benefit their efforts conferred on the collective.  The Settlement Agreement provides that Defendant will

pay a Gross Settlement Amount of $2,150,000 to settle all claims against the collective.  Swartz

Decl. ¶ 34.  By Plaintiffs' Counsel's estimation, the $2,150,000 guaranteed settlement amount

represents approximately 80 percent of the collective's lost wages excluding liquidated damages,

using the fluctuating workweek methodology and based upon the estimate that each Eligible

Class Member worked overtime an average of 44 weeks per year and 10 overtime hours per

week.  *Id.* ¶ 37.  This recovery is significant in light of the risk that litigation may have yielded

little or no recovery at all.  *See* Section II, *supra*.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an

order: (1) approving the $2,150,000.00 settlement set forth in the Settlement Agreement; (2)

approving the proposed Settlement Notices and directing their distribution; (3) approving Service

Awards of $4,500 and payments of $4,500 to each of the Plaintiffs; (4) approving Plaintiffs'

request for one-third of the settlement fund for attorneys' fees, plus reimbursement of costs and

expenses; (5) approving the Settlement Administrator's estimated fees and costs of $24,073; and

(6) incorporating the terms of the Settlement Agreement.

Dated: February 5, 2018                          Respectfully submitted,
       New York, New York

                                                 By:   /s/ Justin M. Swartz

                                                 **OUTTEN & GOLDEN LLP**
                                                 Justin M. Swartz*
                                                 Michael J. Scimone*
                                                 685 Third Avenue, 25th Floor
                                                 New York, New York 10017
                                                 Telephone:     (212) 245-1000

                                                 **FAIR WORK P.C.**
                                                 Hillary Schwab, BBO #666029
                                                 Brant Casavant, BBO #672614
                                                 192 South Street, Suite 450
                                                 Boston, Massachusetts 02111

22

Telephone: (617) 607-3261

**SHAVITZ LAW GROUP, P.A.**
Michael Palitz*
830 3rd Avenue, 5th Floor
New York, New York 10022
Telephone:     (800) 616-4000

Gregg I. Shavitz*
1515 S. Federal Hwy
Boca Raton, Florida 33432
Telephone:     (561) 447-8888

**COHEN MILSTEIN SELLERS
& TOLL PLLC**
Joseph M. Sellers*
Miriam R. Nemeth*
1100 New York Ave. NW #500
Washington, DC 20005
Tel: (202) 408-4600

*Attorneys for Plaintiffs and the Putative
Class and Collective*

* admitted *pro hac vice*.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2018 a copy of the foregoing document was filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Justin M. Swartz
Justin M. Swartz
