## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PANAGIOTIS KROKOS and CHARLES TUTTLE, on behalf of themselves and all others similarly situated, | No. 1:16-cv-12082 |
| Plaintiffs, | Judge Indira Talwani |
| v. | |
| THE FRESH MARKET, INC., | |
| Defendant. | |

### DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

I, Justin M. Swartz, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, which, together with the firms of Shavitz Law Group, P.A, Fair Work, P.C., and Cohen Milstein Sellers & Toll PLLC, are Plaintiffs' Counsel herein.  O&G is a 60-plus attorney firm based in New York City, with additional offices in Chicago, San Francisco, and Washington, D.C., that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2.      I am one of the lawyers responsible for prosecuting Plaintiffs' claims on behalf of Plaintiffs.

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**My Background and Experience**

4.      I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors.  Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5.      I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002.  I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois.  I am a member in good standing of each of these bars.

6.      From September 1998 through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases.  From March 2002 through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7.      Since joining O&G in December 2003, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

8.      I am or was co-lead counsel on many wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008).  Others include *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (approving settlement of nationwide FLSA collective action settlement); *Blum v. Merrill Lynch & Co.*, Nos. 15 Civ. 1636, 15 Civ. 2960, slip op. at 2 (S.D.N.Y. May 6, 2016) (same); *Puglisi v.*

*T.D. Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (certifying

class and approving settlement of nationwide wage and hour class and collective action); *Aboud*

*v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *2-4 (S.D.N.Y. Nov. 4,

2014) (same); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y.

Sept. 16, 2014) (appointing O&G as class counsel); *Clem v. KeyBank*, No. 13 Civ. 789, 2014

WL 2895918, at *2-4 (S.D.N.Y. June 20, 2014) (certifying class and approving settlement of

nationwide wage and hour class and collective action); *Yuzary v. HSBC Bank USA, N.A.*, No. 12

Civ. 3693, 2013 WL 5492998, at *2-4 (S.D.N.Y. Oct. 2, 2013) (certifying class action under

New York Labor Law and appointing O&G as class counsel); *Beckman v. KeyBank, N.A.*, 293

F.R.D. 467, 472-76 (S.D.N.Y. 2013) (certifying class and approving settlement of nationwide

wage and hour class and collective action).

   9.  I am a member of the National Employment Lawyers Association ("NELA") and

formerly served on the Executive Board of its New York Chapter ("NELA/NY"). I recently

served on the Fair Labor Standards Act Protocols Committee formed by the Institute for

Advancement of the American Legal System ("IAALS"), which drafted IAALS's Initial

Discovery Protocols for Fair Labor Standards Act Cases. I am a former co-chair of NELA's Fair

Labor Standards Act Committee. I served on the Civil Rights Committee of the New York City

Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee

on Labor and Employment Law from September 2002 until June 2005. I was co-chair of the

American Bar Association Labor and Employment Law Section Ethics and Professional

Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment

Opportunity Committee.

   10.  I speak frequently on employment law issues, including wage and hour issues and

discrimination issues.  I have recently been a faculty member for continuing legal education

programs focused on employment law and ethics sponsored by the American Bar Association

Section of Labor and Employment Law; the New York State Bar Association Labor and

Employment Law Section; the New York City Bar Committee on Labor and Employment Law,

NELA, and the Practicing Law Institute, among others.

      11.    In connection with my work, I regularly read the New York Law Journal, advance

sheets, and other literature related to employment law and class action law developments.  I

attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the

American Bar Association, and other organizations.

**O&G's Expertise**

      12.    O&G is nationally recognized for its expertise in litigating complex class actions,

including wage and hour cases like this one.  *See, e.g.*, *Ballinger v. Advance Magazine

Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *7 (S.D.N.Y. Dec. 29, 2014)

(appointing O&G as class counsel, explaining that "[b]ased on the firm's performance before

[the court] in this and other cases and its work in the foregoing and other cases, [the court has] no

question that it will prosecute the interests of the class vigorously."); *Beckman*, 293 F.R.D. at

477 (noting that O&G "are experienced employment lawyers with good reputations among the

employment law bar"); *Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4

(S.D.N.Y. Apr. 30, 2013) (appointing O&G as class counsel); *Capsolas*, 2012 WL 1656920, at

*2 (appointing O&G as class counsel and noting O&G attorneys "have years of experience

prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law

and in class action law"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622

(S.D.N.Y. 2012) (O&G attorneys "have substantial experience prosecuting wage and hour and

other employment-based class and collective actions."); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

### Overview of Investigation, Litigation and Settlement Negotiations

13.     Plaintiffs are current and former employees of Defendant who worked as exempt-classified Assistant Store Managers ("ASMs") throughout the United States, except California. Defendant is a specialty foods retailer that operates more than 170 supermarkets in 23 states.

14.     Plaintiffs allege that Defendant violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, the Massachusetts Wage Laws ("MWL"), Mass. Gen. L. c. 151 § 1A, § 1B, and the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, by improperly classifying them and other ASMs as exempt from federal and state overtime requirements and failing to pay them overtime wages.

15.     On January 28, 2016, Plaintiffs sent a letter to Defendant requesting that the Parties engage in pre-suit settlement discussions regarding ASMs' overtime claims.

16.     The Parties had multiple conversations over the course of several months regarding the claims and Plaintiffs' request to mediate prior to filing a lawsuit, but were unable to reach a pre-suit resolution.

17.     Plaintiffs commenced this action by filing a Class and Collective Action Complaint on October 18, 2016.  Defendant filed its Answer on December 30, 2016.

18.     On January 30, 2017, the Court approved the Parties' stipulation to send notice of the action to the proposed FLSA collective pursuant to 29 U.S.C. § 216(b).

19.     Court-authorized notice subsequently went out to a collective of 1,127 ASMs, and approximately 409 Opt-Ins joined the case.

20.     During and after the notice period, both sides exchanged discovery requests, and Defendant produced a limited universe of documents, including job descriptions, store-level training materials, and Plaintiffs' personnel files.

21.     On May 8, 2017, Plaintiffs sought leave to file an amended complaint, ECF No. 53, which Defendant opposed on May 22, 2017.

22.     The Parties also briefed a discovery dispute concerning the scope of opt-in discovery.

23.     Plaintiffs moved for a protective order to limit the number of Opt-In Plaintiffs subject to Defendant's written discovery requests, and Defendant submitted an opposition.

24.     While Plaintiffs' motions were pending, in early June 2017, the Parties agreed to attempt to resolve the case through private mediation and, on June 5, 2017, submitted a joint motion to stay all proceedings.  The Court granted the motion on June 6, 2017.

25.     The Parties participated in two full-day mediation sessions with Michael Young, an experienced mediator in employment and wage and hour law, on August 23, 2017 and October 24, 2017.

26.     As part of the mediation process, the Parties engaged in an informal exchange of discovery pursuant to a confidentiality agreement.

27.     Defendant produced data to allow Plaintiffs to calculate damages, including data showing the number of potential collective members in the job title, salaries, and weeks worked. Plaintiffs' Counsel analyzed this data and constructed a damages model.

28.     The Parties submitted mediation briefs setting forth their respective positions as to liability and damages, and exchanged them so that both sides could evaluate the strengths and weaknesses of their positions.

29.     The Parties attended a full-day mediation on August 23, 2017, but were unable to reach a settlement that day.

30.     The Parties continued their settlement efforts, and attended a second mediation session on October 24, 2017.  During that session, the Parties reached an agreement in principle and executed a term sheet.

31.     Over the next several months, the Parties finalized the terms of the settlement, and executed a formal Settlement Agreement on February 5, 2018.

**Settlement Claims Administrator**

32.     The Parties have retained JND Legal Administration ("JND"), a wage and hour claims administrator, to serve as the Settlement Administrator.

33.     JND's fee, estimated to be approximately $24,073, will be paid from the Gross Settlement Amount.

**Settlement Amount**

34.     The Settlement Agreement provides that Defendant will pay a Gross Settlement Amount of $2,150,000 to settle all claims against the collective.

35.     The Gross Settlement Fund of $2,150,000.00 is substantial, especially in light of the considerable risk that Plaintiffs faced.

36.     Plaintiffs' calculations show that the average net Settlement Award will be approximately $1,220.63 (after fees, Service Awards, and costs (including settlement administration costs) are deducted).

37.     By Plaintiffs' estimate, this is a substantial percentage of the collective members' lost wages.  By Plaintiffs' Counsel's estimation, the $2,150,000 guaranteed settlement amount represents approximately 80 percent of the collective's lost wages excluding liquidated damages, using the fluctuating workweek methodology and based upon the estimate that each Eligible Class Member worked overtime an average of 44 weeks per year and 10 overtime hours per week.

38.     However, by Defendant's estimate, even if Plaintiffs were to establish at trial that ASMs should have been classified as non-exempt, the lost wages of the collective would be much smaller because Defendant maintains that ASMs worked fewer hours per week than Plaintiffs claim.

### Service Awards

39.     The Settlement Agreement provides that, subject to Court approval, Plaintiffs will each receive a $4,500 Service Award in recognition of assistance rendered in obtaining the benefits of the settlement for the collective as well as the risks they took to do so.  *Id.* ¶ 3.3(A).

40.     In addition, by executing the Settlement Agreement, Plaintiffs agree to waive any right to re-employment with Defendant, sign a general release, and, subject to Court-approval, will each receive an additional payment of $4,500 in consideration.

41.     The Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit.

42.     Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members.  Plaintiffs participated in an extensive pre-suit investigation, provided information and documents crucial to establishing their claims and the claims of the putative collective, extensively reviewed the claims presented, helped Plaintiffs' Counsel prepare for the mediation, and made themselves available during the day of and after the mediation sessions.

43.     The Plaintiffs undertook substantial direct and indirect risk.  They agreed to bring the action in their names, to be deposed, and to testify if there was a trial.

44.     Plaintiffs' actions have resulted in substantial benefit to the class, leading to an overall gross recovery of $2,150,000.00, which results in an estimated net average award of $1,220.63.

45.     The requested Service Awards and payments for the waiver of any right to re-employment for both Plaintiffs collectively amount to less than 1 percent of the total recovery, which is a reasonable percentage.

**Costs and Expenses**

46.     As of January 31, 2018, O&G has incurred $22,034.11 in costs:

| COSTS | |
| --- | --- |
| **Description** | **Total** |
| Claims/Settlement Administrator Fees | $8,500.00 |
| Computerized Research | $217.78 |
| Document Management/Hosting | $29.60 |
| Fedex/UPS | $67.91 |
| Meals | $199.27 |
| Mediation Fees | $11,109.00 |
| Photocopy/print | $226.45 |
| Postage (U.S. Mail) | $150.42 |
| Telephone Charges | $53.67 |

| Travel | $1,480.01 |
|---|---|
| **Grand Total** | **$22,034.11** |

47.     As of January 31, 2018, Plaintiffs' Counsel's combined costs incurred in litigating and settling this matter are approximately $32,233.04.

**Exhibits**

48.     Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Settlement and Release Agreement ("Settlement Agreement").  Exhibit A to the Settlement Agreement is the Proposed Approval Order and Judgment Approving Settlement.  Exhibit B to the Settlement Agreement are the Notice of Settlement (for Opt-Ins) and Notice of Settlement and Opportunity to Join Collective Action (for Non-Opt-Ins).

49.     Attached hereto as **Exhibit B** is a true and correct copy of the proposed reminder postcard that will be mailed to Eligible Settlement Collective Member who have not cashed their Settlement Checks within sixty days after the initial mailing or subsequent re-mailing.

50.     Attached hereto as **Exhibit C** is a true and correct copy of *Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016).

51.     Attached hereto as **Exhibit D** is a true and correct copy of *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program*, No. 14 Civ. 10138 (D. Mass. Feb. 15, 2017).

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: February 5, 2018
        New York, New York                    Respectfully submitted,

                                               */s/ Justin M. Swartz*
                                              Justin M. Swartz

                                              **OUTTEN & GOLDEN LLP**
                                              685 Third Avenue, 25th Floor

New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Admitted *pro hac vice*

## CERTIFICATION OF SERVICE

I hereby certify that on **February 5, 2018**, a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

 */s/ Justin M. Swartz*                    
Justin M. Swartz (admitted *pro hac vice*)
